IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

```
IN RE:                          )
                                )    Chapter 7
DARREN J. FRANZENBURG           )
LISA A. FRANZENBURG,            )    Bankruptcy No. 04-03282
                                )
    Debtors.                    )
```

**ORDER RE U.S. TRUSTEE'S MOTION TO DISMISS
UNDER 11 U.S.C. § 707(b)**

The above-captioned matter came on for trial on December 21, 2004 pursuant to assignment. Debtors Darren and Lisa Franzenburg appeared in person with their attorney, Michael Mollman. John Schmillen appeared on behalf of the U.S. Trustee's Office. After hearing evidence and arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

The U.S. Trustee seeks dismissal of Debtors' Chapter 7 petition based upon substantial abuse under 11 U.S.C. § 707(b). In so doing, the U.S. Trustee asserts that Debtors have the ability to pay unsecured creditors a substantial amount of their unsecured claims under a Chapter 13 analysis. Debtors resist dismissal.

**FINDINGS OF FACT**

The evidence establishes that Debtor Darren Franzenburg is employed as a laborer for Alliant Energy in Cedar Rapids, Iowa. Schedule I lists his total monthly income as $2,524. However, the record establishes that Mr. Franzenburg's income was improperly computed and it is actually $2,830 per month.

Debtor Lisa Franzenburg is employed by United Fire and Casualty in Cedar Rapids, Iowa. She lists her monthly income as $1,707. This amount is undisputed by the U.S. Trustee.

In addition to basic monthly income, the parties have worked some overtime throughout their careers with these respective employers. Mr. Franzenburg has received

substantially more income through overtime than his wife. Nevertheless, the U.S. Trustee's Office has not considered any overtime pay in this analysis under § 707(b). Without the inclusion of any overtime, the parties have a combined total monthly income of $4,537.

Debtors have prepared two versions of Schedule J listing their current monthly expenses. Debtors originally scheduled total monthly expenses in the amount of $3,893. The U.S. Trustee filed the pending Motion to Dismiss under § 707(b) on November 17, 2004. Debtors filed an amended Schedule J on December 8, 2004 now asserting total monthly expenses of $4,383. The U.S. Trustee questions portions of these expenses as excessive. The Court feels that it need not go into an item-by-item examination of these expenses. It is sufficient to state that Debtors now claim monthly expenses of $4,383 and combined income of $4,537. They have excess income per month of $154 which could be applied toward the payment of unsecured debt.

In addition, Debtors claimed tax refunds for taxable year 2003. They received a refund from their Federal tax withholdings of $2,976 and a refund from their Iowa tax withholdings of $794, for a total refund of $3,770. Prorated over the course of 12 months, this excess withholding generates $314 per month in additional disposable income.

Without an overly critical analysis of Debtors' expenses, and without the inclusion of any overtime pay, under the Schedules prepared by Debtors themselves, Debtors have $468 per month which could be applied toward the repayment of unsecured creditors. This would total almost $17,000 over the course of a 36 month plan.

Debtors' evidence was largely hypothetical in nature. They testified about the age of their cars and the fact that the cars may need to be replaced in the future. They testified about potential medical conditions, such as braces for their children, which would require payment of additional medical expenses. However, none of these matters are included in their Schedule J. At this point, they are merely hypothetical expenses which may or may not occur. If such legitimate expenses do occur in the future, Chapter 13 provides for modification of plans, under appropriate circumstances, to accommodate these changes. It is not appropriate to simply assign a number to theoretical expenses

which may or may not occur.  Ultimately, Debtors submit that at the end of each month they have no disposable income remaining and they are not living an extravagant live style.

## CONCLUSIONS OF LAW

Section 707(b) of the Bankruptcy Code provides the Court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7.  In re Taylor, 212 F.3d 395, 396 (8th Cir. 2000); 11 U.S.C. § 707(b). "Substantial abuse" is not a defined term. In the Eighth Circuit, "[a] Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'"  In re Koch, 109 F.3d 1285, 1288 (8th Cir. 1997).

For § 707(b) purposes, ability to pay creditors is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding.  Koch, 109 F.3d at 1288. Confirmation of a Chapter 13 plan requires, if an objection to confirmation is advanced, that the plan provide that all of the debtors' projected disposable income to be received during a three-year plan will be applied to plan payments.  11 U.S.C. § 1325(b)(1)(B).  "Disposable income" is defined as that which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor.  11 U.S.C. § 1325(b)(2)(A).  Evaluating Debtors' ability to fund a Chapter 13 plan necessitates a review of Debtor's disposable income.  See generally In re Butler, 277 B.R. 917, 920-21 (Bankr. N.D. Iowa 2002).

The Bankruptcy Code requires a meaningful and realistic budget, accompanied by the devotion of most of the debtor's surplus income to repay creditors.  In re Downin, 284 B.R. 909, 912 (Bankr. N.D. Iowa 2002).  Chapter 13 debtors are not required to live as paupers; neither are they allowed to continue an extravagant lifestyle at the expense of creditors. Butler, 277 B.R. at 920.  Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses.  Downin, 284 B.R. at 912.

> Some expenditures are clearly essential, or
> nondiscretionary, such as reasonable amounts

3

>  budgeted for food, clothing and shelter.  Debtors
>  are also allowed some latitude regarding
>  discretionary spending for items such as recreation,
>  clubs, entertainment, newspapers, charitable
>  contributions and other expenses.  The proper
>  methodology is to aggregate all expenses projected
>  by the debtor which are somewhat more discretionary
>  in nature, and any excessive amounts in the
>  relatively nondiscretionary line items such as food,
>  utilities, housing, and health expenses, to quantify
>  a sum which, for lack of a better term, will be
>  called "discretionary spending."

Id. at 912-913 (citations omitted).  To determine whether any essential or nondiscretionary expenses are excessive, that is, not reasonably necessary for support, and therefore deserving of placement within the discretionary spending category, a court may compare expenses with the IRS Collection Financial Standards.  See In re Beckel, 268 B.R. 179, 182 (Bankr. N.D. Iowa 2001).

Debtors assert the Court should consider the totality of the circumstances, including Debtors' good faith, the lack of extravagance in Debtors' expenses and their candor.  "Certainly the court may take the petitioner's good faith and unique hardships into consideration under section 707(b)."  In re Walton, 866 F.2d 981, 983 (8th Cir. 1989).  The substantial abuse inquiry focuses primarily, however, on Debtors' ability to pay.  Koch, 109 F.3d at 1288.

**ANALYSIS**

Based on the adjustments to income and the final version of Debtors' Schedule J, the U.S. Trustee's analysis estimates a substantial amount of disposable income available for Debtors to pay toward unsecured creditors in a hypothetical three-year Chapter 13 plan.

The uncontested evidence establishes that Debtors have monthly disposable income of $4,537 without including any overtime which the parties' work history shows has sometimes been substantial.  Additionally, according to Debtors' own amended Schedule J, they have monthly expenses of $4,383.  This generates a total of $154 disposable income based solely on Debtors' own schedules.  However, in addition, Debtors over-withheld taxes in the past and received a total tax

4

refund for 2003 of $3,770.  This refund prorates into the sum of $314 per month which, under a Chapter 13 analysis, is includable as disposable income.  The evidence establishes that Debtors have not changed their withholding methodology and it is probable that they will receive a similar refund for taxable year 2004.

    The U.S. Trustee challenged additional items of Debtors' amended Schedule J.  The U.S. Trustee need not establish a specific amount of disposable income, only that Debtors have the ability to make a substantial payment.  The U.S. Trustee has satisfied this burden without a line-by-line examination of Debtors' amended Schedule J.  The Court notes, however, that a careful examination of Debtors' Schedule J would result in finding excess expenses.

    At the hearing, Debtors testified about their amended Schedule J.  The Court finds it troubling that even after filing an amended schedule of expenses Debtors did not seem confident of its accuracy.  They spent considerable time impeaching their own amended Schedule J by questioning whether amounts listed were adequate.

    Debtors in general are allowed to amend their Schedule J to conform to their financial condition.  This Court is becoming increasingly concerned, however, that Debtors and their counsel do not take the obligations imposed under the Code seriously.  All Schedules presented to the Court are under penalty of perjury.  Debtors are required to spend the time necessary to present accurate income and expense information which forms the basis for a § 707(b) review.  It appears that Debtors, and counsel, too frequently begin to take seriously the accuracy of Schedules I and J only after being presented with a pending § 707(b) motion.  This Court has already stated that amendments made on the eve of a § 707(b) hearing present immediate credibility issues.  <u>In re Kressig</u>, No. 00-02247, slip op. at 5 (Bankr. N.D. Iowa Oct. 18, 2000).  Confidence of the public in the accuracy of these schedules requires that Debtors expend the effort necessary to insure their accuracy.  This court will review these schedules, on a case-by-case basis, to insure that the information provided is reliable.

    Suffice it to state that without any further in-depth analysis, Debtors have monthly disposable income of at least $468 which could be applied toward a hypothetical Chapter 13

plan.  This would total almost $17,000 over the course of a normal 36- month Chapter 13 plan.

Debtors have listed total unsecured debt of $68,900. Based upon the foregoing analysis, Debtors are in a financial position to repay approximately one-fourth of all their unsecured debt over the course of a hypothetical Chapter 13 plan.  This Court concludes that the U.S. Trustee has met his burden of proving that granting Debtors' Chapter 7 relief would be substantial abuse of the provisions of the Bankruptcy Code.  This case should be dismissed under § 707(b).  Debtors will be given the opportunity to voluntarily convert to Chapter 13 prior to entry of dismissal.

**WHEREFORE**, the U.S. Trustee's Motion to Dismiss is GRANTED.

**FURTHER**, Debtors are granted until January 14, 2005 within which to elect to convert to Chapter 13.

**FURTHER**, if Debtors fail to convert to Chapter 13 by said date, this case will be dismissed for substantial abuse without further notice or hearing.

Dated and Entered  December 30, 2004

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE